O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE A ESPINOZA, | ) | NO. EDCV 10-01460-MAN |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on September 24, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for a period of disability ("POD"), disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On October 21, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on July 6, 2011, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken

the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On September 14, 2006, plaintiff filed an application for POD, DIB, and SSI. (Administrative Record ("A.R.") 48.)  Plaintiff, who was born on July 6, 1965 (A.R. 54),[1] claims to have been disabled since August 15, 2006 (A.R. 48, 50), due to diabetes, high blood pressure, neuropathy, and skin infection (*see, e.g.,* A.R. 299, 310).  Plaintiff has past relevant work experience as a barber and building maintenance/laborer. (A.R. 54, 300.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 190-94, 200-05), plaintiff requested a hearing (A.R. 206).  On December 3, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Michael D. Radensky (the "ALJ").  (A.R. 155-85.)  At the hearing, medical expert Samuel Landau, M.D., and vocational expert Corrine J. Porter also testified.  On March 23, 2009, the ALJ denied plaintiff's claims (A.R. 48-55), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).  That decision is now at issue in this action.

///

///

///

_____

[1]   On the alleged disability onset date, plaintiff was 41 years old, which is defined as a younger individual.  (A.R. 54; *citing* 20 C.F.R. §§ 404.1563, 416.963.)

2

### SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since August 15, 2006, the alleged onset date of his disability.  (A.R. 48, 50.)  The ALJ determined that plaintiff has the following severe impairments: "diabetes mellitus with peripheral neuropathy and recurrent abscesses."  (A.R. 50.)  The ALJ also determined that plaintiff does not have an impairment or a combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926).  (A.R. 51.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work. (A.R. 51.)  Specifically, the ALJ determined that plaintiff can:

> use a cane as needed, lift and carry 20 pounds occasionally, 10 pounds frequently, stand/walk two hours in an eight hour workday, sit for six hours in an eight hour workday, no operating foot pedals or controls, no climbing ladders, no work at heights or balancing, and work environment should be air conditioned.

(*Id.*)

The ALJ concluded that plaintiff is unable to perform his past relevant work.  (A.R. 54.)  However, having considered plaintiff's age, education, work experience, RFC, and the testimony of the vocational

expert, the ALJ found that jobs exist in the national economy that plaintiff could perform, including cashier II, small items assembly, charge account clerk, and inspectors production.   (A.R. 54-55.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from August 15, 2006, through the date of his decision.   (A.R. 55.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.   Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).   Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Id. (citation omitted).   The "evidence must be more than a mere scintilla but not necessarily a preponderance."   Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).   "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."   Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."   Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).   "The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.    Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).    However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."    Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874.    The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"    Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ:    (1) improperly considered and rejected the opinion of his treating physician; (2) failed to find that plaintiff suffers from a legally severe impairment attributable to his hands; and (3) improperly evaluated plaintiff's credibility.    (Joint Stipulation ("Joint Stip.") at 6-32.)

///

///

///

///

///

5

**I.**   **The ALJ Failed To Give A Specific And Legitimate Reason Supported By Substantial Evidence For Rejecting The Opinion Of Plaintiff's Treating Doctor**.

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).  When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id*.  It is well established that "[w]hen a treating physician's opinion is contradicted . . . , the ALJ must assess its persuasiveness in light of specified factors, including the 'length of the treatment relationship and the frequency of examination;' the 'nature and extent of the treatment relationship;' and the treating opinion's consistency 'with the record as a whole.'" Aranda v. Comm'r SSA, 405 Fed. Appx. 139, 141 (9th Cir. 2010)(*quoting*

6

Orn, 495 F.3d at 631).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)(finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

An ALJ "has a special duty to fully and fairly develop the record and to assure that claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Pursuant to 20 C.F.R. §§ 404.1512(e) and 416.912(e), the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information . . . ." See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(noting that "[i]f the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to

conduct an appropriate inquiry").

In a February 12, 2008 Multiple Impairment Questionnaire, plaintiff's treating doctor, Edna Arteaga-Hernandez, M.D., a family practitioner, diagnosed plaintiff with insulin dependent diabetes mellitus, diabetic neuropathy, and chronic dermatological staph infections. (A.R. 502.) Dr. Hernandez noted that plaintiff has severe, chronic, burning and debilitating pain in his legs, feet, hands, and forearms. (A.R. 503.) Dr. Hernandez opined that plaintiff can: sit and stand/walk for one hour or less in an eight-hour work day; must be able to get up and move around intermittedly for 10-15 minutes at a time; can occasionally lift and carry five pounds or less; can never lift or carry more than five pounds; has marked limitations in grasping, turning, and twisting objects; marked limitations in using fingers/hands for fine manipulations; and marked limitations in using arms for reaching (including overhead). (A.R. 504-06.) Dr. Hernandez determined that plaintiff: has limited vision; needs to avoid wetness, gases, temperature extremes, humidity, and heights; and should not push, pull, kneel, bend, or stoop. (A.R. 508.) Dr. Hernandez opined that plaintiff's impairments are ongoing and can be expected to last at least 12 months. Further, Dr. Hernandez opined that plaintiff's impairments will produce "good days" and "bad days," and plaintiff is likely to be absent from work more than three times a month as a result. (*Id.*) Lastly, Dr. Hernandez noted that plaintiff has tried multiple therapies and modalities without improvement. (A.R. 508.)

In his decision, the ALJ gives less weight to Dr. Hernandez's opinion than that of nonexamining, nontreating medical expert Samuel

Landau, M.D., because: (1) Dr. Hernandez's opinion contains conclusions of disability -- a determination reserved to the ALJ; and (2) "Dr. Landau found no objective support for Dr. Hernandez's statements in [her Questionnaire]." (A.R. 52-53.)

To the extent the ALJ rejects Dr. Hernandez's opinion because it contains an opinion regarding disability -- a determination which is reserved to the ALJ -- the ALJ's reasoning is unpersuasive. A medical opinion "'reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008)(citing 20 C.F.R. § 404.1527(a)(2)). Here, not only did Dr. Hernandez find that plaintiff had disabling pain, but she also opined, as described in detail supra, that plaintiff had significant limitations and restrictions resulting from his impairments. Rather than affording weight to Dr. Hernandez's medical opinions regarding plaintiff's limitations and restrictions, the ALJ apparently ignored them on the ground that Dr. Hernandez also rendered a non-dispositive opinion regarding ultimate disability. While this may constitute a specific reason for rejecting Dr. Hernandez's opinion, it is not a legitimate one.[2] See id.

_____

[2]   Defendant mischaracterizes plaintiff's argument regarding the ALJ's failure to give proper weight to the non-dispositive portions of Dr. Hernandez's opinion. Defendant asserts that, "[c]ontrary to [p]laintiff's contention . . . , the ALJ was not required to accept the opinion of Dr. Hernandez that [p]laintiff was disabled." (Joint Stip. at 18.)

In fact, as plaintiff correctly asserts:

9

Further, to the extent the ALJ rejects Dr. Hernandez's opinion because Dr. Landau found that Dr. Hernandez's statements in the Questionnaire were not supported by objective evidence, the ALJ characterizes Dr. Landau's testimony too broadly and, thus, inaccurately. *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 723 (9th Cir. 1998)(reversing and remanding case because ALJ's characterization of the record was "not entirely accurate regarding the content or tone"); *see also* <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate competent evidence in the record to justify his conclusion). At the administrative hearing, when the ALJ asked Dr. Landau whether he disagreed with Dr. Hernandez's assessment that plaintiff would miss several days from work every month, Dr. Landau responded, "No, I don't disagree with [Dr. Hernandez's] assessment. I could find no objective evidence to support [it] though." (A.R. 165.) Contrary to the ALJ's suggestion, however, Dr. Landau did not state or suggest that *all* of Dr. Hernandez's findings in her Questionnaire lacked objective support. As such, the ALJ's reasoning

---

Dr. Hernandez did not simply render an unsupported declaration that [plaintiff] is "disabled," as the ALJ's reasoning would suggest. Rather, she took note of his underlying conditions -- the same ones which the ALJ had conceded amount to legally severe impairments, listed the objective and subjective bases for those diagnoses, noted the primary symptoms that stem from those disorders, and then gave detailed estimates of how those conditions affect his ability to function in several areas. Not only did she render opinions as to how his impairments affect his ability to sit, stand, walk, lift, carry, and perform manipulative functions, but she also discussed how they affect his non-exertional functions, such as his ability to concentrate, maintain attention, tolerate workplace stresses, and maintain regular job attendance. . . . Dr. Hernandez' assessments were of a much more fundamental and specific nature, and constitute the very types of opinions that the Social Security Regulations most value.

(Joint Stip. at 10; internal citations omitted.)

10

does not constitute a specific and legitimate reason for the wholesale rejection of Dr. Hernandez's opinion regarding the nature and extent of plaintiff's impairments, limitations, and restrictions.  Moreover, to the extent that the ALJ needs to know the basis of the Dr. Hernandez's opinion regarding plaintiff's likely absences from work, the ALJ should conduct an appropriate inquiry.  *See* Smolen, 80 F.3d at 1288.

As a consequence of his dismissal of the opinion of Dr. Hernandez for improper reasons, the ALJ failed to assess that opinion adequately. Specifically, the ALJ failed to assess the persuasiveness of the treating physician's opinion in view of the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d).  These factors, which the ALJ did not consider, suggest that Dr. Hernandez's opinion deserves greater weight than that accorded to it by the ALJ.  In pertinent part, Dr. Hernandez regularly treated plaintiff for over two years, and her assessment of plaintiff was based on regular observation, evaluation, and diagnosis. Accordingly, the ALJ erred by assigning her opinion "little weight" without considering all of these factors.[3]

Moreover, defendant incorrectly asserts that plaintiff's reliance on Lester v. Chater is misplaced.  In Lester, the Ninth Circuit found that the ALJ committed an error of law when his primary reason for rejecting the opinions of the treating and examining sources was that they conflicted with the testimony of the nonexamining medical advisor. 81 F.3d at 830.  Specifically, the Court found that "[t]he nonexamining medical advisor's testimony does not by itself constitute substantial

---

[3] In contrast, Dr. Landau, to whose opinion the ALJ gives controlling weight, never examined or treated plaintiff.

evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion." *Id.* at 831.

Defendant contends that this case is distinguishable from <u>Lester</u>, because "[h]ere, the ALJ relied on the fact that [the record] lacked adequate objective evidence . . . to support Dr. Hernandez's opinion, in addition to the fact that it conflicted with the opinions of non-examining medical expert Dr. Landau and State agency reviewing physician, Dr. [Diane] Rose[, M.D.]" -- opinions that the ALJ found "were consistent with and supported by the objective evidence in the record." (Joint Stip. at 20.) Defendant notes, for example, that Dr. Landau "reviewed . . . the record evidence and based his opinion on independent findings in the record." (Joint Stip. at 21.)

However, as noted *supra*, the ALJ's finding that the opinion of Dr. Hernandez is not supported by objective evidence is unavailing, because it is based on a mischaracterization of the record. Further, although not entirely clear, to the extent defendant suggests that Dr. Landau's opinion could constitute substantial evidence, because it is based on independent findings in the record, defendant's contention is unpersuasive. Significantly, while Dr. Landau cites records which post-date Dr. Hernandez's February 2008 Questionnaire, it does not appear that Dr. Landau relied on any independent clinical findings that *differ* from those found by Dr. Hernandez in assessing plaintiff's RFC.[4] Indeed,

---

[4]      When asked how he arrived at his assessment, Dr. Landau testified that he relied on the following evidence:

    1F, the records 2006 where [plaintiff] is being treated for an abscess, one of his many.  And at that time, the diabetes

Dr. Landau's findings that plaintiff suffers from uncontrolled diabetes and peripheral neuropathy mirror Dr. Hernandez's findings.   Thus, it appears that the ALJ's primary reason for rejecting Dr. Hernandez's opinion was that it conflicts with that of the nontreating, nonexamining physician, Dr. Landau -- a reason which, as the Ninth Circuit held in Lester, constitutes error.   Accordingly, plaintiff's reliance on Lester was not misplaced.

Therefore, for the aforementioned reasons, the ALJ erred by failing to give specific and legitimate reasons for rejecting the opinion of Dr. Hernandez regarding the limitations and restrictions caused by plaintiff's impairments.[5]   On remand, the ALJ should revisit his

---

mellitus and peripheral neuropathy were diagnosed.   In 5F the diabetes mellitus is uncontrolled and neuropathic pain was present in his hands and feet.   In 6F he was using a cane.   He was using a cane by March 23rd of '07.   9F is a [RFC] by his Dr. Hernandez from February of this year that says he disabled because of pain.   In 10F there are some records of treatment for various infections.   Diabetes mellitus is out of control up to 2008.   [Plaintiff] was being treated with medication, Actos, which causes edema, he had some swelling in his legs.   He had abscesses that were incised and drained in his finger and buttock.   He had a hospitalization for lactic acidosis, which is a complication of the medication he was taking for diabetes.   Again, his diabetes is not, is not controlled [INAUDIBLE].   In 11F a record of 2008 which shows the same things.   He hurt his back, he was lifting 90 pounds of cement.   He hurt his back, strained his back.   Diabetes was checked again and was out of control.   And then in 12F he had a right thigh abscess and 13F records 2007, 2008 [(which are those of Dr. Hernandez)] that showed the same thing, the uncontrolled diabetes mellitus.

(A.R. 162-63.)   In effect, Dr. Landau relied on records which show that plaintiff suffered from uncontrolled diabetes, peripheral neuropathy, and complications stemming from diabetes -- findings which do not differ from those of Dr. Hernandez.

[5]   Moreover, although defendant points to evidence in the record to support the ALJ's rejection of Dr. Hernandez's opinion, the Court cannot entertain these post hoc rationalizations.   See, e.g., Connett,

consideration of Dr. Hernandez's opinions and findings, and should the ALJ elect to give them no weight and instead to give controlling weight to the opinion of a nonexamining medical expert, the ALJ should set forth specific and legitimate reasons for so doing.  Further, to the extent the ALJ needs to know the basis of any of Dr. Hernandez's diagnoses or medical opinions, the ALJ should conduct an appropriate inquiry.

## II.   The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Not Credible.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her

340 F.3d at 874 (finding that "[i]t was error for the district court to affirm the ALJ's . . . decision based on evidence the ALJ did not discuss").

14

conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 53.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be clear and convincing.

The ALJ stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (A.R. 53.) Specifically, the ALJ found plaintiff to be not credible because: (1) plaintiff's "subjective complaints are in excess of the objective findings of record"; and (2) plaintiff's testimony contains various inconsistencies. (*Id.*)

The ALJ's first ground for rejecting plaintiff's testimony is unpersuasive. In his decision, the ALJ rejects plaintiff's testimony that he has "poor sensation in his hands, drops things, is unable to write for too long, cannot do any keyboarding, and is unable to sit for very long," because plaintiff's subjective complaints exceed the objective findings of record. (A.R. 53.) However, as recognized by the Ninth Circuit in <u>Bunnell</u>, 947 F.2d at 347, "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce

evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings." Accordingly, the ALJ's finding that the objective evidence does not fully support the extent of plaintiff's subjective symptoms cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. *See* <u>Varney v. Secretary</u>, 846 F.2d 581, 584 (9th Cir. 1988); <u>Cotten v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also* <u>Burch</u>, 400 F.3d at 681.

The ALJ's other ground for discrediting plaintiff -- *to wit*, alleged inconsistencies in plaintiff's testimony -- is equally unpersuasive. First, it appears the ALJ found that plaintiff is not credible because of inconsistencies in his testimony regarding his ability to perform household chores. Specifically, the ALJ notes that plaintiff "stated that he is unable to perform household chores and that his wife performs all chores. [Plaintiff] indicated that this is due in part to his wife performing her wifely duties and performing her role." (A.R. 53.) At the administrative hearing, plaintiff testified that while he can "take care of himself," his wife and children perform the more complex chores.[6] (A.R. 174.) For example, plaintiff testified that he does not cook. (*Id.*) When asked by the ALJ whether he refrained from cooking because of his "problems or . . . because [his] wife just tends to do the cooking," plaintiff responded "Both. Both. I kind of get afraid, you know, like the pots, I can't lift them and you know." (*Id.*) However, contrary to the ALJ's implication, the two statements do

---

[6] Plaintiff testified that he performs "simple" tasks around the house. (A.R. 174.) For example, plaintiff testified that he can get himself something to drink, put dishes away, pick up after himself, and put his clothes into a pile in the corner. (A.R. 174-75.)

not appear to be mutually exclusive and/or inconsistent, and thus, the ALJ's reason does not constitute a clear and convincing reason for finding that plaintiff is not credible.

Second, the ALJ finds plaintiff's testimony that he does not drive to be inconsistent with his testimony that he drove twice in the two months preceding the hearing before the ALJ. A review of plaintiff's testimony, however, reveals no actual inconsistency between plaintiff's two statements. As plaintiff properly notes, when the ALJ asked plaintiff if he "drives," it was reasonable for plaintiff to assume that the ALJ was asking whether plaintiff drives *regularly*. (Joint Stip. at 27.) As such, plaintiff's testimony that he does not drive as a general matter is not inconsistent with his testimony that he drove on two occasions in two months.[7] Moreover, because plaintiff readily admitted that he had driven twice in two months, it does not appear that plaintiff was being evasive.[8] Accordingly, the ALJ's reasoning does not constitute a clear and convincing reason for rejecting plaintiff's credibility.

Third, the ALJ finds plaintiff's testimony that he cannot sit for more than 15 to 30 minutes at a time without feeling pain and pressure to be inconsistent with his testimony that he watches television for up to five hours per day. However, plaintiff specifically testified that

---

[7]      Upon re-examination, plaintiff testified that he does not drive because of the pain he experiences in his hands and particularly in his feet.  (A.R. 171.)  Specifically, plaintiff testified that, because of his foot pain, he is afraid that he is going "to press a pedal and hurt [himself] or somebody." (*Id.*)

[8]      The ALJ did not ask plaintiff how far, for what duration of time, or for what purpose he drove on these two occasions.

17

he elevates his legs when he watches television to alleviate the pain and stress he experiences.  (A.R. 175.)  When he elevates his legs, plaintiff testified that he elevates them at a ninety degree angle. (A.R. 183.)  Significantly, the vocational expert testified that if, along with plaintiff's other limitations, plaintiff needed to elevate his feet for two to three hours a day at a ninety degree angle, "[t]here wouldn't be any work available at that degree of elevation."  (*Id.*) Thus, the ALJ's reasoning on this point is unavailing.

Lastly, the ALJ finds that plaintiff is not credible, because plaintiff was allegedly not forthcoming with his educational level. Specifically, the ALJ notes that plaintiff "indicated that he had an 11th grade education, but first testified only to a 10th grade education level, but upon further questioning, finally admitted he had a GED." (A.R. 53.)  However, contrary to the ALJ's suggestion, it does not appear that plaintiff was trying to be evasive.  At the administrative hearing, the ALJ asked plaintiff what was "the highest educational level [he had] completed." (A.R. 159.)  In response, plaintiff stated "tenth grade, tenth grade, I believe." (*Id.*)  When the ALJ noted that plaintiff "had indicated eleventh grade when [he] filled out [his] paperwork," plaintiff explained that while he "did go to the eleventh grade . . . [, he could not] remember if [he] finished it because it was in a camp." (*Id.*)  When asked whether he had a GED, plaintiff responded in the affirmative, but noted that "it's all for a school [INAUDIBLE]." (A.R. 160.)  The ALJ then explained to plaintiff that "the GED is a high school equivalent.  So for all intents and purposes you have a high school education by the nature of having the GED . . . it's like getting a high school diploma without having to actually finish actual high

school." (*Id.*)  As evidenced by plaintiff's testimony and the ALJ's explanation of a GED, it appears that plaintiff was not attempting to deceive the ALJ but, rather, was genuinely confused as to the highest educational level he had completed and the significance of obtaining a GED.  The ALJ's reason, therefore, cannot constitute a clear and convincing reason for discrediting plaintiff.

Accordingly, for the aforementioned reasons the ALJ failed to give clear and convincing reasons, as required, for finding plaintiff to be not credible.  This constitutes error.

## III.  **The ALJ Must Reconsider Whether Plaintiff's "Hand Problems" Constitute A Severe Impairment.**

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments.  20 C.F.R. §§ 404.1520, 416.920.  The Ninth Circuit has held that this step two inquiry is "a de minimus screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290.  Accordingly, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005)(citation omitted); *see* Soc. Sec. Ruling 85-28, 1985 WL 56856, at *3, 1985 SSR LEXIS 19, at *9 (stating that "[a] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*")(emphasis added).

The ALJ found that plaintiff has the severe impairments of diabetes mellitus with peripheral neuropathy and recurrent abscesses.  However, the ALJ found plaintiff's subjective complaints of "hand problems" to be not supported by the evidence of record.  (A.R. 50.)  The ALJ further found that plaintiff's hand problems no more than slightly limit his ability to perform basic work activity. (A.R. 50-51.)  Accordingly, the ALJ concluded that plaintiff's hand problems are "nonsevere."  (A.R. 51.)

Contrary to the ALJ's finding, and as plaintiff properly notes, the evidence of record indicates that plaintiff has recurrent neuropathic pain in his hands and/or fingers along with infections and abscesses. (*See, e.g.,* A.R. 414 (04/07 -- "severe hand and feet neuropathic pain, discharged with mild improvement"); A.R. 796-97 (05/07 -- plaintiff complained of worsening pain in his hands and feet; physician opined that plaintiff has peripheral neuropathy); A.R. 560-61, 570-71 (09/07 -- abscess on right fifth digit requiring surgery); A.R. 514-15, 520-21 (02/08 -- soft tissue swelling of the left second finger; "heavy" streptococcus growth); A.R. 609 (06/08 -- "[c]hronic painful peripheral neuropathy secondary to diabetes").)  On multiple occasions, plaintiff's treating doctor, Dr. Hernandez, opined that plaintiff has neuropathy in his hands.  (*See, e.g.,* A.R. 835 (08/07 -- polyneuropathy in hands); A.R. 817 (11/07 -- peripheral neuropathy).)  In fact, in her February 2008 Questionnaire, Dr. Hernandez noted that plaintiff has neuropathy in hands and forearms, which limits plaintiff from doing repetitive reaching, handling, fingering, and lifting.  (A.R. 505-06.)  Dr. Hernandez described the pain that plaintiff experiences in his hands and forearms as severe, chronic, burning, stabbing, and debilitating. (A.R.

503.)  It does not appear, however, that the ALJ reviewed these findings in determining that plaintiff's "hand problems" are not severe.

Accordingly, on remand, the ALJ needs to revisit the issue of whether plaintiff suffers from a severe hand impairment.  Specifically, the ALJ needs to consider the aforementioned evidence and review and reconsider properly the opinion of Dr. Hernandez and the testimony of plaintiff regarding the pain and resulting limitations he experiences in his hands.  After so doing, the ALJ can determine what impact, if any, this has on his assessment of whether plaintiff's "hand problems" constitute a severe impairment.

**IV. <u>Remand Is Required</u>.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

///

21

1    Remand is the appropriate remedy to allow the ALJ the opportunity

2    to remedy the above-mentioned deficiencies and errors.  *See, e.g.,*

3    Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for

4    further proceedings is appropriate if enhancement of the record would be

5    useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)

6    (remand appropriate to remedy defects in the record).  On remand, the

7    ALJ must correct the above-mentioned deficiencies and errors and further

8    develop the record as appropriate.  After doing so, the ALJ may need to

9    reassess plaintiff's RFC, in which case additional testimony from a

10   vocational expert likely will be needed to determine what work, if any,

11   plaintiff can perform.

13                              **CONCLUSION**

15   Accordingly, for the reasons stated above, IT IS ORDERED that the

16   decision of the Commissioner is REVERSED, and this case is REMANDED for

17   further proceedings consistent with this Memorandum Opinion and Order.

19   IT IS FURTHER ORDERED that the Clerk of the Court shall serve

20   copies of this Memorandum Opinion and Order and the Judgment on counsel

21   for plaintiff and for defendant.

23   **LET JUDGMENT BE ENTERED ACCORDINGLY.**

24   DATED:  October 17, 2011

                                        _Margaret A. Nagle_
                                        _____
                                        MARGARET A. NAGLE
                                        UNITED STATES MAGISTRATE JUDGE